IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JOSE NAHUN                           )
CORRALES-UMANZOR,                    )
                                     )
                                     )
          Petitioner,                )
                                     )
v.                                   )          No. CIV-26-180-JD
                                     )
SCARLET GRANT,                       )
Warden, Cimarron Detention           )
Center, et al.,                      )
                                     )
          Respondents.[1]            )

## REPORT AND RECOMMENDATION

Petitioner Jose Nahun Corrales-Umanzor seeks a writ of habeas corpus

under 28 U.S.C. § 2241. Doc. 1.[2] United States District Judge Jodi W. Dishman

referred the matter to the undersigned Magistrate Judge for proceedings

---

[1]    Pursuant to Fed. R. Civ. P. 25(d), Department of Homeland Security (DHS) Secretary Markwayne Mullin is substituted for former Secretary Noem as a party. https://www.dhs.gov/news/2026/03/24/us-senate-confirms-markwayne-mullin-secretary-department-homeland-security (last visited April 16, 2026). Todd Blanche is the acting Attorney General and is substituted for former Attorney General Pam Bondi as a party. https://www.justice.gov/ag (last visited April 16, 2026). Respondents Warden Scarlet Grant and Rohit Rai, "Field Office Director" are not federal officials, and the response is not filed on their behalf. *See* Doc. 9, at 2 n.1.

[2]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

1

consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 4. Respondents filed a response, Doc. 9, and the time for Petitioner to reply has lapsed. *See* Doc. 5, at 1-2. For the reasons set forth below, the undersigned recommends the Court grant habeas corpus relief and order Petitioner's immediate release.

## I.    Factual background and Petitioner's claims.

Petitioner is a 34-year-old citizen of Honduras. Doc. 1, at 4. Prior to his detention, Petitioner did not have a criminal history and he has ties in Oklahoma through his wife, who is currently non-detained. *Id.* He entered the United States with his family in 2021 without inspection at the Texas border. *Id.;* Doc. 9, at 2.

DHS officials released Petitioner and his family on an order of supervision (OOS) and placed him in removal proceedings. Doc. 1, at 4. Petitioner sought asylum, which was denied in October 2025, and Petitioner has appealed to the Board of Immigration Appeals (BIA). *Id.*[3] Petitioner alleges he was wrongfully detained in July 2025 during an Immigration and Customs Enforcement (ICE) check-in without "adequate notice of the revocation of the [OOS]." *Id.*

Petitioner alleges his detention violates both his procedural and substantive due process rights. *Id.* at 5-6. He asks  this Court to issue a show

---

[3]    The parties have not provided the Court with an update of the status of Petitioner's appeal.

cause order requiring Respondents to show cause why his petition should not be granted within three days[4]; declare that his detention violates the Due Process Clause of the Fifth Amendment, 8 U.S.C. § 1231; and issue a Writ of Habeas Corpus ordering Respondents to release him immediately, or in the alternative, schedule a bond hearing before an immigration judge (IJ) where the IJ must "afford Petitioner bond on his own recognizance, or a reasonable bond amount." *Id.* at 6.  He also seeks attorneys' fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. *Id.*

## II.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III.    Analysis.

### A.    Statutory and regulatory framework.

Petitioner argues Respondents violated his Fifth Amendment procedural due process rights when they revoked his OOS and re-detained him without

---

[4]    The Court addressed Petitioner's request when it directed Respondents to respond to the petition. *See* Doc. 5.

"adequate notice" and denied him the "opportunity to demonstrate that he should not be detained." Doc. 1, at 4-5.[5]

Petitioner's allegations require the Court to consider the regulations Respondents are obligated to follow in revoking his OOS. *See Saqib v. Andrews*, 2026 WL 350830, at *2 (E.D. Cal. Feb. 9, 2026) ("Because these claims require examination of whether the government followed its own regulations that set out procedures in revoking release, procedures that protect important due process rights, the Court discusses these claims together."), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026); *see e.g., Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023) ("The plain language of the regulation, however, does not allow a court in the first instance to make the required individualized finding. To the extent ICE claims that it made such a

---

[5]   Respondents argue that because Petitioner claims to be "a class member under *Maldonado Bautista*" he is "collaterally estopped" from bringing this action. Doc. 9, at 3-6 (quoting Doc. 1, at 2); *see Maldonado Bautista v. Santacruz*, 2026 WL 468284, at *2 (C.D. Cal. Feb. 18, 2026). "District courts are limited to granting habeas relief 'within their respective jurisdictions.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)). The *Maldonado Bautista* court does not have jurisdiction over the Petitioner's custodian, as that court sits in California and Petitioner is held in the Western District of Oklahoma. *See, e.g., Maldonado Bautista v. Santacruz,* 813 F. Supp. 3d 1084, 1125 (C.D. Cal. 2025) ("The Court cannot order nationwide release or bond hearings for Bond Eligible class members, especially so to those confined outside [the Central District of California].").

determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination.").

Agencies must follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-68 (1954); *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988)). When a noncitizen has been detained pursuant to a final order of removal, ICE is required to release the noncitizen on an OOS if ICE determines there is no significant likelihood of the noncitizen's removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)-(h); *see also Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001) ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

Once a noncitizen is released under an OOS, as Petitioner was, his OOS may be revoked in two circumstances: (1) for violations of "conditions of release" specified in the OOS or (2) "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2).

The decision to revoke an OOS on account of changed circumstances must be based on an individualized determination that those changed circumstances render removal significantly likely in the reasonably foreseeable future. *See Kong,* 62 F.4th at 619-20 (citing 8 C.F.R. § 241.13(i)(2)). ICE should

make this determination based on the following factors:

> [T]he history of the [noncitizen's] efforts to comply with the order of removal, the history of [ICE's] efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of [ICE's] efforts to remove this [noncitizen] and the [noncitizen's] assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of [noncitizens] to the country or countries in question.

8 C.F.R. § 241.13(f). The regulations place the burden to establish changed circumstances on ICE. *See Saqib,* 2026 WL 350830, at \*3 ("The regulations at [] § 241.13(i) . . . . indicate that when ICE revokes release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" (quoting *Escalante v. Noem,* 2025 WL 2206113, at \*3 (E.D. Tex. Aug. 2, 2025))).

If ICE elects to revoke an OOS, the noncitizen must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). The "reasons for revocation" that ICE must provide when revoking a noncitizen's OOS cannot be mere conclusory assertions about changed circumstances but must contain specific facts supporting ICE's decision to revoke the OOS.[6] And at the interview, the

---

6      "Courts across the country have repeatedly held that . . . boiler plate language is simply insufficient to give notice under § 241.13." *Ahmed v. Olson,*

6

noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* ICE must then consider the contested facts and determine whether revocation of release was warranted. *Id.*

> **B.    ICE violated Petitioner's procedural due process rights by revoking his OOS without following its own regulations and giving him adequate notice and the opportunity to respond.**

Respondents do not specify why Petitioner's OOS was originally issued and agree he was released in 2024, so it is reasonable to infer that ICE must have determined that "there was no significant likelihood of removal in the reasonably foreseeable future" when it released him. *See Pham v. Bondi,* No. CIV-25-1157-SLP, 2025 WL 3477023, at \*3 (W.D. Okla. Oct. 30, 2025), *adopted,* 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025). Respondents do not allege that Petitioner violated any conditions of release, so it appears that Respondents rely on the "changed circumstances" prong as the justification for revocation. *Id.* at \*4.

"Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" *Iza v. Arnott*, 2026 WL 67152, at \*3 (W.D. Mo. Jan. 8, 2026) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "The Fifth Amendment's Due Process Clause forbids the Government

---

2026 WL 836123, at \*4 (E.D. Ky. Mar. 26, 2026) (collecting cases).

to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted). Individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025). And the Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752–53 (1979).

Petitioner's Notice of Custody Determination provides no reason for the revocation of his OOS. *See* Doc. 9, Ex. 2. The Government had the opportunity to apprise the Court of all facts relating to the revocation of Petitioner's OOS when Respondents responded to the petition, but provide the Court with no reasons for the revocation. Respondents do not suggest there are changed circumstances present that necessitated revoking Petitioner's OOS. As a result, Respondents failed to comply with ICE's revocation procedures when they re-detained Petitioner after his release on an OOS. *See Pham,* 2025 WL 3243870, at *1 ("ICE[] failed to comply with § 241.13(i)(2) in establishing a

8

change of circumstances that demonstrated a significant likelihood of removal in the reasonably foreseeable future at the time of Petitioner's re-detention. District courts in the Tenth Circuit facing this same issue have found that a failure to establish changed circumstances amounts to a due process violation that justifies release.") (collecting cases).

There is also no indication in the record that Petitioner received formal written notification of the reasons for his renewed detention when he was detained in July 2025, or at any time thereafter. Under § 241.13(i)(3), "*[u]pon revocation*, the [noncitizen] will be notified of the reasons for revocation of his or her release," after which the noncitizen will be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id* (emphasis added).[7]

"The essence of due process is notice and an opportunity to respond." *Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025). But Petitioner

---

[7]    This requirement of written notice tracks the requirements of another ICE regulation, § 241.4(d), which provides:

> A copy of any decision by the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner to release or to detain an alien shall be provided to the detained alien.

8 C.F.R. § 241.4(d).

"cannot be expected to 'respond to the reasons for revocation stated in the notification' if the notification does not actually *state* any reasons for revocation." *Id.* And the Notice of Custody Determination provided to Petitioner contains no allegations of changes in circumstances nor of a violation of the conditions of release in his OOS. *See* Doc. 9, Att. 2.

In sum, Respondents fail to show that ICE made the proper determination when it revoked Petitioner's OOS and the Notice provided to Petitioner did not provide him with the reason behind the revocation of his OOS. *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025) ("[T]he record is clear that ICE's revocation of release violated its own regulations by failing to have an authorized official make the revocation decision, failing to provide [the petitioner] with notification of the reasons for his re-detention, failing to provide [the petitioner] with an informal interview, or some combination of these deficiencies.").

## C.  Appropriate remedy.

Petitioner's procedural due process rights were violated when ICE ignored its own regulations, depriving him of adequate notice and the opportunity to respond to any reasons for the revocation. So, the Court must determine what the adequate remedy shall be. The undersigned concludes the only appropriate remedy is immediate release pursuant to the conditions of Petitioner's preexisting OOS. *See Pham,* 2025 WL 3243870, at *1 (collecting

10

cases granting immediate release where ICE "failed to comply with § 241.13(i)(2) in establishing a change of circumstances that demonstrated a significant likelihood of removal in the reasonably foreseeable future at the time of . . . re-detention"); *Ahmed,* 2026 WL 836123, at \*5-6 (collecting cases granting immediate release where ICE detainees were denied notice under § 241.13).[8]

## V.     Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's request for habeas relief, and order his immediate release from custody subject to the terms of his unlawfully revoked OOS. The undersigned further recommends that the Court order Respondents submit a declaration pursuant to 28 U.S.C. § 1746 affirming that Petitioner has been released from custody within ten business days of the Court's order.[9]

The undersigned advises the parties of their rights to file an objection to this Report and Recommendation with the Clerk of this Court on or before

---

[8]     The undersigned does not address Petitioner's remaining argument about the alleged violation of his substantive due process rights under *Zadvydas, see* Doc. 1, at 5-6, because this Report and Recommendation, if adopted, will moot these requests.

[9]     To the extent that Petitioner may be entitled to EAJA fees and costs as a prevailing party, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention").

April 21, 2026, in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2).[10] The undersigned further advises the parties that failure to make a timely objection to this report and recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in this matter.

ENTERED this 16th day of April, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[10] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to five days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").